PRESENT:  All the Justices

MICHAEL DONNELL WARD

OPINION BY
v.    Record Number 060788     JUSTICE G. STEVEN AGEE
January 12, 2007

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Michael Donnell Ward appeals from the judgment of the Court of Appeals of Virginia, which affirmed his convictions for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute, in violation of Code §§ 18.2-248.1 and 18.2-250.1.  Ward contends that the Court of Appeals erred in approving the trial court's refusal to grant his motion to suppress evidence obtained pursuant to an anticipatory search warrant.  For the reasons set forth below, we will affirm the judgment of the Court of Appeals.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

On November 19, 2003, United States Postal Inspector Evelyn Cross obtained a federal search warrant to investigate a suspicious package at the Petersburg, Virginia, post office.  Cross found the package contained 2 pounds 1.2 ounces of marijuana, and 2.35 ounces of cocaine.  The drugs were heat sealed in plastic and the package contained carbon paper.  Cross testified that drug traffickers commonly use these measures in an attempt to avoid detection by drug-sniffing dogs.  The address on the package read: Ms. Anna Wilson, 129 Church St.,

Petersburg, Va., with a return address of: John Wilson, Building 1737, Fort Bliss, Texas, and was sent by priority mail. Cross could find no record of an Anna Wilson living at 129 Church Street.

Shirlon Saunders, a mail carrier, testified at a hearing on Ward's motion to suppress that he had twice delivered similar packages to an address on his route, 129 South Old Church Street. (Emphasis added.) Saunders also testified that these packages were received in person by Ward, whom he identified in the courtroom. The prior deliveries had been packaged in a similar manner, bore the same return address, had both been addressed to Anna Wilson, and had also been mailed by priority mail.

On November 20, 2003, a judge of the Circuit Court of the City of Petersburg issued the search warrant at issue in this case upon the affidavit of Detective J. K. Riley of the Petersburg police department. The affidavit listed the address to be searched as "129 S[outh] Old Church St[reet]," and contained a detailed description of the house at that address. However, the affidavit "did not recite any facts concerning appellant's prior acceptance of similar packages addressed to Anna Wilson at 129 South Old Church Street" as mail carrier Saunders would later testify. Ward v. Commonwealth, 47 Va. App. 733, 740, 627 S.E.2d 520, 524 (2006). The record does not

2

indicate the police gave the trial court, prior to issuance of the warrant, "any information concerning why they believed a nexus existed between appellant's address and the address on the package."  Id.

The affidavit submitted by Detective Riley for the search warrant specified the objects of the search as cocaine, marijuana, paraphernalia and money.  The affidavit stated, in part:

> The package is addressed to: Ms. Anna Wilson, 129 Church St., Petersburg, Va.  On 11-19-03 agent Evelyn Cross applied for and received a search warrant for the above mentioned package.  During the search of the box approx. 1 lb. 3.6 oz of marijuana was contained in a shoe box and 13.6 oz of marijuana and 2.4 oz of cocaine was contained in a second shoe box. . . . Agents from the US Postal Service acting in an undercover capacity will pose as a delivery person for the post office and will attempt to deliver the package.  The Petersburg Police Department working in conjunction with the US Postal Service will attempt to deliver the package on today's date.  The search warrant will only be executed on the residence if the following occurs: The package and its contents are accepted and/or the package enters the residence itself, or the police observe the package exiting the residence, or the security of the controlled samples are at risk, or if the undercover officer's safety is at risk.

Upon issuance of the search warrant, Postal Inspector Cross, posing as a mail carrier, conducted a controlled delivery of the package at 129 South Old Church Street later that day. Ward, who was in the yard of the residence when Cross arrived, met her outside the front door.  Cross handed the package to

Ward and told him that she had attempted to deliver it at another address the week before, and "the lady said it wasn't hers." She then asked Ward if Anna Wilson lived at his address and whether the package was for him. After "holding the package and studying it," Ward answered that the package was his. In addition to the package, Cross also handed Ward some letter mail. While Cross was walking away, Ward called to her and said that one of the pieces of mail was not his, and that "the person didn't live there." The letter that Ward passed back to Cross was addressed to "Barbara Robinson."

Immediately following the controlled delivery, police officers executed the search warrant and found the package unopened on a kitchen table inside Ward's residence. Police officers found 62 small plastic bags in Ward's bedroom, of the type used to package marijuana in $10 to $20 amounts, along with $250 in currency underneath Ward's mattress. After being advised of his Miranda rights, Ward told police that the package was not his, but had initially thought it was because he was expecting some tapes to be delivered to his house.

Prior to trial, Ward moved to suppress the drug evidence obtained during the search of his residence. He argued that the search warrant was facially invalid because neither the warrant nor the supporting affidavit provided any nexus between the name and address on the package – Anna Wilson at 129 Church Street –

and the address of the residence that was to be searched – 129 South Old Church Street.  The Commonwealth responded that any deficiencies in the nexus requirement were cured by the fact that the package was known to contain drugs and that the search was conditioned upon a recipient at that address accepting the package.  The trial court denied Ward's motion and found him guilty of both charges.

In affirming the judgment of the trial court, the Court of Appeals noted that anticipatory search warrants, such as in the case at bar, pose a heightened concern of "misunderstanding or manipulation by government agents" (quoting United States v. Garcia, 882 F.2d 699, 703-04 (2d Cir. 1989).  47 Va. App. at 745, 627 S.E.2d at 526.  The Court of Appeals explained:

> Most notably, the government or a third party, acting either intentionally or accidentally, could mail a controlled substance to a residence to create probable cause to search the premises where it otherwise would not exist.  Thus, to prevent law enforcement authorities from creating the circumstances which give rise to probable cause to search, [courts have] held that probable cause to support an anticipatory warrant does not exist unless a sufficient nexus between the parcel and the place to be searched exists.  For example, . . . a showing that the contraband was on a "sure course" to the destination to be searched[, as a result of circumstances not set in motion by law enforcement personnel, has been held to] demonstrate a sufficient nexus.

Ward, 47 Va. App. at 745-46, 627 S.E.2d at 526 (quoting United States v. Dennis, 115 F.3d 524, 529-30 (7th Cir. 1997)).

5

The Court of Appeals held Ward's Fourth Amendment rights were not violated because his knowing acceptance of the package was sufficient to overcome any deficiency under a "sure course" analysis. Id. at 747, 627 S.E.2d at 527. The Court of Appeals did not address the Commonwealth's alternative argument that the "good faith" exception under United States v. Leon, 468 U.S. 897 (1984), applied in this case.

We awarded Ward an appeal but also accepted the Commonwealth's assignment of cross error that the "Court of Appeals erred in failing to address the good faith exception to the exclusionary rule."

## II. ANALYSIS

### A. Standard of Review

In reviewing the denial of a motion to suppress based on the alleged violation of an individual's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth. Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980). The burden is on the defendant to show that the trial court committed reversible error. Id. We are bound by the trial court's factual findings unless those findings are "plainly wrong or unsupported by the evidence." Pyramid Development, L.L.C. v. D & J Associates, 262 Va. 750, 753, 553 S.E.2d 725, 727 (2001). However, the trial court's application of the law is reviewed de novo. Brown v.

6

Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005). Furthermore, when reviewing the validity of a warrant and its supporting affidavit, the "magistrate's determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)) (internal quotation marks omitted).

### B.   United States v. Grubbs

Ward contended at trial, and on appeal, that the affidavit tendered to the trial judge who issued the search warrant was facially invalid because it failed to establish a "nexus" between the address on the package, "129 Church Street" and the address to be searched, "129 South Old Church Street." Specifically, Ward contends "[w]here there are two distinctly different addresses, the failure of the affidavit to include any information supporting a conclusion that the package was incorrectly addressed renders that affidavit facially invalid because there is insufficient probable cause to sustain the issuance of a warrant for 129 S. Old Church St."

Ward argues that a controlled delivery by police raises the possibility of government abuse because government agents could direct the evidence that is the object of the warrant to be sent to the address to be searched and thereby place contraband at a location where it would otherwise not be.

7

Courts have addressed this problem by holding that probable cause to issue an anticipatory search warrant does not exist unless the government can demonstrate a sufficient nexus between the parcel and the address to be searched. E.g., Dennis, 115 F.3d at 530; United States v. Hendricks, 743 F.2d 653, 654 n.1, 655 (9th Cir. 1984). This nexus requirement may be fulfilled by showing that the package was initially placed on a "sure course" to the address to be searched by actors other than law enforcement personnel. Dennis, 115 F.3d at 530; see also Hendricks, 743 F.2d at 655; United States v. Dornhofer, 859 F.2d 1195, 1198 (4th Cir. 1988).

Ward contends that the package in the instant case was not on a sure course to his home because the address on the package was different from his own. He argues that the only reason the package was delivered to his home was that the police "diverted" it there. Furthermore, Ward asserts that "an affidavit offered in support of a request for a search warrant, must 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" Because there was no nexus between the address on the package and the address listed in the warrant, Ward contends the requisite probable cause was lacking and the warrant was therefore invalid when issued.

The Court of Appeals determined that "the 'sure course' analysis does not require that law enforcement officials had no

8

involvement whatever in placing the package in the mail or in effecting its delivery to the particular location to be searched." Ward, 47 Va. App. at 746, 627 S.E.2d at 527. Citing federal appeals court decisions,[1] the Court of Appeals opined that "in determining the validity of an anticipatory warrant, a court may consider the facts surrounding its execution." Id. at 744, 627 S.E.2d at 526. Specifically addressing the failure of Detective Riley's affidavit to establish a nexus between "129 Church Street" and "129 South Old Church Street", the Court of Appeals stated:

> We hold that, in a case involving such an address discrepancy, conditioning execution of a warrant for the search of the residence on knowing acceptance of the package by someone at that address – acceptance by someone who has had the address discrepancy pointed out to him or her – and the taking of the item into the residence adequately protects individuals residing at that address from Fourth Amendment abuses that might otherwise result from execution of an anticipatory warrant. The warrant and search challenged in appellant's case met these conditions.

Id. at 747, 627 S.E.2d at 527.[2]

_____

[1] E.g., United States v. Moetamedi, 46 F.3d 225, 229 (2d Cir. 1995); United States v. Leidner, 99 F.3d 1423, 1429 (7th Cir. 1996); see also McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984).

[2] Before reaching this conclusion, the Court of Appeals acknowledged the decision of the United States Supreme Court in Whiteley v. Warden, 401 U.S. 560 (1971), where the Court observed:
> Under the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed

9

In retrospect, had Detective Riley's affidavit contained the mail delivery history as explained by mailman Saunders, any claimed "sure course" infirmity in the issuance of the search warrant would likely be moot.  However, the Court of Appeals did not rely on Saunders' statements to assuage any nexus defect in the sure course of the package for probable cause purposes. Instead, it relied on the events ex post the issuance of the search warrant.  In particular, the Court of Appeals relied upon the actual satisfaction of the affidavit's triggering condition, the acceptance of the package at 129 South Old Church Street.

On the same date the Court of Appeals opinion in Ward was issued, the United States Supreme Court issued its opinion in United States v. Grubbs, ___ U.S. ___, 126 S.Ct. 1494 (2006). The Court there defined an anticipatory search warrant as "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of a crime will be located at a specified place."  Id. at ___, 126 S.Ct. at 1498 (quoting 2 W. LaFave, Search and Seizure § 3.7(c), p. 398 (4th ed. 2004)).  The warrant before us in this case is such an anticipatory search warrant.

The Supreme Court then noted that

> to the issuing magistrate.  See Aguilar v. Texas, 378 U.S. 108, 109 n.1 [(1964)].  A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless.

Whiteley, 401 U.S. at 565.

10

> when an anticipatory warrant is issued, "the fact that the contraband is not presently located at the place described in the warrant is immaterial, so long as there is probable cause to believe that it will be there when the search warrant is executed."

Id. at ___, 126 S.Ct. at 1499 (citations and internal quotation marks omitted).

This probable cause determination, sufficient to authorize the issuance of an anticipatory search warrant, was then described by the Supreme Court as a two-pronged inquiry by the issuing magistrate:

> [F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that if the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," Gates, [462 U.S. at 238], but also that there is probable cause to believe the triggering condition will occur. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination. See Garcia, [882 F.2d] at 703.

Grubbs, ___ U.S. at ___, 126 S.Ct. at 1500.

In the present case, it appears self-evident that the first prong of the Grubbs inquiry, the probability that the package would be found at 129 South Old Church Street, was satisfied by the terms of Detective Riley's affidavit. The second prong of the Grubbs probable cause analysis, where the magistrate determines if "there is probable cause to believe the triggering condition will occur," is not so easily answered. Grubbs may

11

limit the probable cause analysis only to that information before the magistrate at the time the decision to issue the warrant is made: "The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination."  If that is so, then events ex post the issuance of an anticipatory search warrant could not be used to satisfy the probable cause requirement.

However, it is unnecessary for us to resolve whether the Court of Appeals analysis meets the requirements of Grubbs because the Commonwealth's assignment of cross error is dispositive in this case.  Accordingly, we will assume, but expressly do not decide, that the search warrant in this case failed to meet the second prong of the probable cause analysis in Grubbs and turn our attention to the assignment of cross error.

C.  United States v. Leon

In United States v. Leon, 468 U.S. 897 (1984), the United States Supreme Court established a good-faith exception to the exclusionary rule, applicable when a search is conducted pursuant to a warrant subsequently determined to be defective for Fourth Amendment purposes.  468 U.S. at 913-25.  We explained the basis and application of the "Leon exception" in Polston v. Commonwealth, 255 Va. 500, 498 S.E.2d 924 (1998):

12

In *Leon*, the United States Supreme Court held that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918; *see* *also* *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984). The Supreme Court also stated that "the exclusionary rule is designed to deter police misconduct . . . ." *Leon*, 468 U.S. at 916. This deterrent is not present when a police officer, acting in objective good faith, obtains a search warrant from a magistrate and conducts a search within the scope of the warrant. *Derr v. Commonwealth*, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991). We have embraced and applied the good faith exception to the exclusionary rule. *Id.* at 422-23, 410 S.E.2d at 667; *McCary v. Commonwealth*, 228 Va. 219, 232, 321 S.E.2d 637, 644 (1984).

*Polston*, 255 Va. at 503, 498 S.E.2d at 925-26.

The good-faith exception is not without limitations. In *Leon*, the Supreme Court outlined four circumstances in which the good-faith exception to the exclusionary rule would not apply. 468 U.S. at 923. These situations have been summarized by the United States Court of Appeals for the Fourth Circuit:

(1) [W]hen the [magistrate] "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) when "the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)"; (3) when "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) when "a warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

*United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 923). Our review of the record shows

13

that none of these circumstances were present in the case at bar and that exclusion of the evidence obtained by the search warrant would not "further the purposes of the exclusionary rule."

In Leon, the Supreme Court first noted that evidence should be excluded where the issuing magistrate or judge, in making his probable cause determination, relied on information that an affiant knew to be false or, save for his "reckless disregard for the truth," should have known to be false.  468 U.S. at 923. Ward has never alleged that any of the information contained in the affidavit was false, or that Detective Riley in any way misled the judge issuing the search warrant.

Second, the Supreme Court stated "the exception . . . will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)."  Leon, 468 U.S. at 923.  In Lo-Ji Sales, the United States Supreme Court held that search warrants that left the decision of what items were to be seized entirely up to the discretion of the executing officers were invalid, and further held that open-ended warrants – to be completed during the search itself – were similarly invalid.  442 U.S. at 325.  In contrast, the search warrant in the case at bar placed a definite limit on the discretion provided the executing officers by clearly enumerating the

14

specific categories of items for which a search was authorized. The search warrant did not leave the decision of the search items to the discretion of the executing officers. Accordingly, the search warrant issued here does not fall within this portion of the exclusions from the Leon rule.

The third limitation to the Leon good-faith exception conditions reliance on the magistrate's probable-cause determination by police officers to those circumstances where that reliance is objectively reasonable. 468 U.S. at 922-23 & n.23. The Leon Court based this third exemption, in part, on Harlow v. Fitzgerald, 457 U.S. 800, 815-19 (1982), in which the Supreme Court found that qualified sovereign immunity based on good faith reliance on a magistrate's finding would be defeated only if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ." Id. at 815. Although the Supreme Court recognized in Leon that the "situations are not perfectly analogous," it drew upon Harlow's test to additionally "eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant." Leon, 368 U.S. at 923.

In the present case, the record does not reflect that the executing officers knew or should have reasonably known that their reliance on the warrant was objectively unreasonable.  The address listed on the package was very similar to the address searched.  Furthermore, the actions of the executing officers in this case were analogous to those described in Polston and Derr. In both cases, the defendant contended the affidavit relied upon by the magistrate lacked a substantial basis to find probable cause to issue the search warrant.  Polston, 255 Va. at 502, 498 S.E.2d at 925; Derr, 242 Va. at 419-20, 410 S.E.2d at 665. Nonetheless, the Court held the evidence seized during the search conducted pursuant to the warrants was admissible under the good-faith exception because the officers "acted in good faith, reasonably, and under the authority of an apparently valid search warrant."  Polston, 255 Va. at 504, 498 S.E.2d at 926; Derr, 242 Va. at 422-23, 410 S.E.2d at 667.  The officers who conducted the search in the case at bar similarly acted in good faith, based on the authority of an apparently valid search warrant.

Lastly, the Supreme Court in Leon stated the good-faith exception will not apply where a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid."  Leon, 468

16

U.S. at 923 (citing <u>Massachusetts v. Sheppard</u>, 468 U.S. 981, 988-991 (1984)).  Clearly, this exclusionary circumstance does not apply as the affidavit and search warrant in the case at bar were explicit as to the place to be searched and the items for which a search was to be conducted.

None of the circumstances described in <u>Leon</u> as exclusions to the application of the good-faith exception apply in this case.  Moreover, exclusion of the evidence obtained by the search warrant would not further the purposes of the exclusionary rule.

> "If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." . . . In short, where the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way" . . . . This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.  In most such cases, there is no police illegality and thus nothing to deter.  It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.  In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

<u>Leon</u>, 468 U.S. at 919-21 (internal citations omitted); <u>see also</u> <u>Polston</u>, 255 Va. at 503, 498 S.E.2d at 925-26.

In the case at bar, Detective Riley sought and was issued a search warrant. The magistrate determined that the information provided by the detective's affidavit supported issuing the warrant, and the detective had no reason to doubt this conclusion. Once the conditions of the anticipatory search warrant were met, the police officers conducted a search limited to the scope of the warrant. The officers therefore acted in good faith, and the deterrent function of the exclusionary rule would not be served by excluding the evidence seized. Accordingly, the good-faith exception of <u>Leon</u> applies in this case and the trial court did not commit reversible error in refusing to grant Ward's motion to suppress.

### III.  CONCLUSION

We will therefore affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.