UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Russell and Senior Judge Clements
Argued at Richmond, Virginia

TERENCE LAMONT COLLINS, JR.

v.        Record No. 0765-17-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE TERESA M. CHAFIN
OCTOBER 23, 2018

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Daniel W. Hall (Law Office of Daniel W. Hall, on brief), for
appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

The Circuit Court of the City of Richmond convicted Terence Lamont Collins, Jr., of

aggravated malicious wounding, attempted robbery, and two counts of using a firearm in the

commission of a felony.  On appeal, Collins maintains that the circuit court erred by denying his

motion to suppress evidence obtained from the search of his cell phone.  Collins also challenges

the sufficiency of the evidence supporting his convictions.  For the following reasons, we affirm

Collins's convictions.

I.  BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the

light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord

the Commonwealth the benefit of all inferences fairly deducible from the evidence."  Riner v.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004).  So viewed, the evidence is as follows.

## A.  THE SHOOTING AND INITIAL IDENTIFICATION OF COLLINS

Around 11:00 a.m. on February 5, 2016, David Johnson saw Collins at a convenience store in downtown Richmond.  Johnson knew Collins from "the street."  Collins offered to give Johnson a ride to a nearby barbershop, and Johnson accepted the offer.  Johnson bought heroin from Collins in a parking lot near the barbershop.  During the transaction, Collins saw that Johnson possessed a substantial amount of money.

Collins followed Johnson through the parking lot after the heroin transaction.  At some point, Collins pointed a pistol at Johnson and told him to "kick the money."  Collins then shot Johnson in both of his legs.  Johnson refused to give his money to Collins.  Collins shot Johnson in the buttocks as he was running toward an alley.  Collins also fired a shot at Johnson's torso, but the bullet got caught in Johnson's jacket and did not actually hit him.  As he was running, Johnson's leg buckled and he fell to the ground.  After Johnson fell, Collins shot him again in the right leg.  He then demanded Johnson's money and hit him in the face with the pistol.  When Johnson cried for help, Collins ran to his car and drove away from the area.

Police officers and emergency medical personnel promptly arrived at the scene of the shooting in response to a 9-1-1 call.  Johnson initially told the police officers that he did not know who shot him.  After he was transported to the hospital, however, Johnson told the police that someone named "Tee" shot him with a "pink and black .380" caliber pistol.  Johnson also provided a detailed physical description of his assailant, and told the police that the shooter was wearing an "Army fatigue jacket."  Based on Johnson's description, the police identified Collins as a suspect.  Johnson subsequently identified Collins as the shooter from a photo lineup.

The police obtained warrants for Collins's arrest, and he was taken into custody five days after the shooting. Collins denied any involvement in the shooting. He told the police that he did not know Johnson or own any firearms. Collins had two cell phones with him when he was taken into custody. He was also wearing a camouflage jacket.

B. THE SEARCH OF THE CELL PHONE AND THE MOTION TO SUPPRESS

Detective Mark Godwin, the lead investigator in the present case, applied for two search warrants pertaining to Collins's cell phones. Godwin initially requested a warrant allowing him to search the personal property held by the jail in which Collins was an inmate and seize the cell phones that he possessed when he came into police custody. Godwin submitted this request to a magistrate in Prince George County, the jurisdiction where the jail was located.

In the affidavit supporting the warrant, Godwin described the shooting and explained how Collins was identified as a suspect. The affidavit also noted that Collins had cell phones in his possession when he was taken into custody. The affidavit then stated:

> Based on your affiant's training and experience investigating weapons offenses, as well as violent crimes, your affiant knows that offenders communicate with cellular devices by means of phone conversations, text messages, email, and social media applications. Your affiant has investigated numerous violent criminal cases in which cell records, to include call detail lists, contact lists, text message content were instrumental in understanding how a violent crime occurred and who was involved. Therefore, . . . your affiant requests a search warrant be issued to further this investigation.

Additionally, the affidavit discussed Godwin's law enforcement training and experience. The affidavit stated that Godwin had been a police officer for nine years and that he was currently an aggravated assault detective. The affidavit also explained that Godwin had investigated numerous crimes involving violence.

The magistrate issued the requested warrant. Pursuant to the warrant, Godwin searched Collins's personal property and seized two cell phones. Godwin then applied for an additional

warrant allowing him to search the contents of one of the cell phones. As the search of the cell phone was to be conducted within the City of Richmond, Godwin submitted his request for the second warrant to a circuit court judge sitting in that jurisdiction. Godwin submitted an almost identical affidavit to support the second warrant. Notably, the affidavit contained the statement regarding the role of cell phones in violent crimes previously quoted in this opinion. After reviewing the affidavit, a circuit court judge issued the requested warrant.

The police found several images on the cell phone when they executed the search warrant. One of the images showed a hand holding a pink and black Ruger .380 caliber pistol. Another image showed Collins. Both images were created within eleven minutes of each other on December 8, 2015, approximately two months before the shooting.

Collins filed a motion to suppress the evidence obtained from the cell phone. Collins argued that the warrant authorizing the search of the cell phone was not supported by probable cause. Specifically, Collins maintained that the affidavit supporting the warrant failed to establish any factual connection between the charged offenses and the cell phone or any reason to believe that evidence pertaining to the shooting would be found on the cell phone. In addition, Collins contended that the warrant was overbroad because it allowed the police to search all of the data on the cell phone.

Following a hearing on Collins's motion to suppress, the circuit court determined that "the affidavit for the search warrant, and the search warrant itself[,] lacked sufficient particularity and were facially overbroad."[1] Nevertheless, the circuit court concluded that the evidence obtained from the search of the cell phone was admissible under the good faith

---

[1] As the Commonwealth did not challenge this ruling, the only issue before us is whether the circuit court erred in determining that the evidence was admissible under the good faith exception. Therefore, we decline to address whether the circuit court correctly concluded that the underlying affidavit failed to establish probable cause to support the search warrant at issue. See Adams v. Commonwealth, 48 Va. App. 737, 745 n.5, 635 S.E.2d 20, 24 n.5 (2006).

- 4 -

exception set forth in <u>United States v. Leon</u>, 468 U.S. 897 (1984). The circuit court acknowledged that the law regarding cell phone searches was in a "state of uncertainty and flux." The circuit court also noted that a circuit court judge issued the warrant authorizing the search. Under these circumstances, the circuit court concluded that the police reasonably relied on the search warrant in good faith and denied Collins's motion to suppress.

## C. COLLINS'S JURY TRIAL

Johnson testified about the events of the shooting at Collins's trial. He unequivocally identified Collins as his assailant, and testified that Collins shot him with a "pink and black .380" caliber pistol. He also testified that Collins drove a small blue four-door car with "donut tires" on the day of the shooting and that Collins was wearing an "Army fatigue jacket" on that day. Johnson explained that he did not identify Collins as his assailant at the scene of the shooting because a crowd of people had gathered around him and he feared further bodily harm if he identified Collins as the shooter in public.

Raymond Fleming, a Dominion Power employee working nearby on the day of the shooting, also testified at Collins's trial. Fleming testified that he heard five gunshots coming from the area where the shooting occurred. Fleming testified that he saw a man matching Collins's general description "walking away really fast" from the area where the gunshots were fired. Fleming explained that the man "kept looking back to his left over his shoulder." Fleming testified that the man was wearing an "old school . . . Army camo" jacket and that he drove away from the area in a small blue four-door car with a "donut" tire.

Eugene Provost, a crime scene detective, testified that three .380 caliber cartridge cases and two bullets were found at the crime scene. An additional bullet was recovered following Johnson's medical treatment. Jami Dizon, a firearm and tool mark forensic scientist, analyzed the cartridge cases and bullets. Dizon testified that the three cartridge cases were fired from the

same firearm and that the three bullets were fired from the same firearm. While Dizon could not verify that the cartridge cases and the bullets were fired from one firearm, she concluded that both the cartridge cases and the bullets could have been fired from a Ruger .380 caliber pistol.

The images obtained from Collins's cell phone were admitted into evidence, including the image of the pink and black Ruger .380 caliber pistol. Additionally, the camouflage jacket that Collins was wearing when he came into police custody was admitted into evidence.

Collins presented defense evidence following the Commonwealth's case-in-chief. Collins testified on his own behalf. Collins acknowledged that he knew Johnson and that he gave him a ride on the day of the shooting. Collins explained that he initially lied to the police about the shooting because he had sold heroin to Johnson. Collins denied that he owned a pink and black pistol, and explained that the image on his cell phone was the cover of his rap mix tape. Collins admitted that he had previously been convicted of five felonies and three misdemeanors involving moral turpitude.

Collins testified that a man wearing a black jacket and a black "du-rag" approached Johnson in the alley near the barbershop on the day of the shooting. When the man said "something like I got you, got your ass, got you," Collins turned and ran back to his car. He then heard a gunshot. Collins suggested that the shooting was related to Johnson's gang affiliation.

Collins also presented testimony from Joshua Brown, an individual who called 9-1-1 after the shooting. Brown testified that he was sitting in his car near the scene of the shooting when he heard one gunshot. He then saw an individual wearing a "black cap and a black hoodie" "bolt" from the alley where the shooting occurred.

The jury ultimately convicted Collins of aggravated malicious wounding, attempted robbery, and two counts of using a firearm in the commission of a felony. This appeal followed.

## II. ANALYSIS

On appeal, Collins contends that the circuit court erred by denying his motion to suppress the evidence obtained from the search of his cell phone. Collins argues that the warrant authorizing the search only stated generalized suspicions and failed to establish the required nexus between the cell phone and the shooting. Collins maintains that the affidavit supporting the warrant was so lacking in indicia of probable cause that an objective police officer could not have reasonably relied on it in good faith. Therefore, Collins contends that the circuit court erred by determining that the evidence obtained from his cell phone was admissible under the good faith exception established by Leon and subsequent cases.

Collins also argues that the evidence presented at trial was insufficient to support his convictions. Collins contends that the evidence failed to establish that he was the perpetrator of the charged offenses. While Collins acknowledges that Johnson unequivocally identified him as the shooter, Collins maintains that Johnson's testimony was contradicted by additional evidence presented in this case. He also argues that Johnson was inherently incredible.

Upon review, we conclude that the circuit court did not err by admitting the evidence obtained from Collins's cell phone pursuant to the Leon good faith exception. We also conclude that the evidence presented in this case was sufficient to support Collins's convictions.

### A. THE CIRCUIT COURT DID NOT ERR BY DENYING COLLINS'S MOTION TO SUPPRESS THE EVIDENCE OBTAINED FROM HIS CELL PHONE

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). "In considering such questions, [we are] required to give deference to the factual findings of the trial court and to determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements." McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541,

545 (2001). "The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error." McCain, 275 Va. at 552, 659 S.E.2d at 515.

"The Fourth Amendment of the United States Constitution requires that a search warrant be based upon probable cause." Sowers v. Commonwealth, 49 Va. App. 588, 595, 643 S.E.2d 506, 510 (2007). Generally, "[w]here law enforcement officers illegally search private premises or seize property without probable cause in violation of the Fourth Amendment, the illegally seized evidence will be excluded from evidence [in a criminal prosecution]." Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31, 33 (2000); see also Anzualda v. Commonwealth, 44 Va. App. 764, 779, 607 S.E.2d 749, 756 (2005) (en banc).

In Leon, "the United States Supreme Court established a good-faith exception to the exclusionary rule, applicable when a search is conducted pursuant to a warrant subsequently determined to be defective for Fourth Amendment purposes." Ward v. Commonwealth, 273 Va. 211, 222, 639 S.E.2d 269, 274 (2008). "Under the good faith exception, '[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence [obtained pursuant to the defective warrant] will not be excluded.'" Sowers, 49 Va. App. at 602, 643 S.E.2d at 513 (quoting Colaw, 32 Va. App. at 810-11, 531 S.E.2d at 33).

"[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. (quoting Leon, 468 U.S. at 916). "An officer ordinarily cannot be expected to question the magistrate's determination of probable cause." Adams, 48 Va. App. at 747, 635 S.E.2d at 24. "Evidence seized pursuant to a warrant should be suppressed 'only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.'" Id. at 746, 635 S.E.2d at 24 (quoting Leon, 468 U.S. at 918). "[P]enalizing the officer for

- 8 -

the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Leon, 468 U.S. at 921.

"The good-faith exception is not without limitations. In Leon, the Supreme Court outlined four circumstances in which the good-faith exception to the exclusionary rule would not apply." Ward, 273 Va. at 222, 639 S.E.2d at 274. A police officer cannot have an objectively reasonable belief that probable cause exists for a search and suppression is an appropriate remedy:

> "(1) [W]hen the [magistrate] 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth'; (2) when 'the issuing magistrate wholly abandoned his judicial role . . .'; (3) when 'an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or (4) when 'a warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.'"

Id. at 222-23, 639 S.E.2d at 274 (quoting United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (quoting Leon, 468 U.S. at 923)); see also Sowers, 49 Va. App. at 602, 643 S.E.2d at 513.

Collins bases his appellate argument on the third limitation to the Leon good faith exception. Collins argues that the affidavit supporting the warrant authorizing the search of his cell phone was so lacking in indicia of probable cause that a reasonable police officer could not have relied on it in good faith. Collins emphasizes that the only statements contained in the affidavit suggesting that evidence pertaining to the shooting would be found on his cell phone were Godwin's generalized statements about the behavior of violent criminals. Therefore, Collins contends that the affidavit failed to establish any factual nexus between the shooting and the data contained on the cell phone.

Assuming without deciding that the circuit court correctly determined that the warrant at issue was not supported by probable cause, we find that the circuit court correctly concluded that the evidence obtained from the search of Collins's cell phone was admissible pursuant to the

Leon good faith exception. Although the affidavit supporting the warrant may have failed to establish the requisite nexus between the cell phone and the shooting, it was not "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*." Leon, 468 U.S. at 923 (emphasis added); see also Ward, 273 Va. at 222, 639 S.E.2d at 274.

"[A]s long as there is *some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception as long as a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed that the warrant was valid." Anzualda, 44 Va. App. at 781, 607 S.E.2d at 757. In the present case, the affidavit supporting the warrant at issue contained some indicia of probable cause. The affidavit contained a description of the shooting, and stated that the victim identified Collins as his assailant. The affidavit also indicated that Collins had a cell phone in his possession when he was taken into police custody following the shooting. The affidavit then explained that the data contained in a suspect's cell phone was often "instrumental in understanding how a violent crime occurred and who was involved."

While conclusions based on a police officer's training and experience are not sufficient in themselves to provide a basis for probable cause, a magistrate may consider such conclusions when determining whether to issue a search warrant. See Sowards, 49 Va. App. at 597, 643 S.E.2d at 510. Based on Godwin's training and experience, he concluded that Collins's cell phone likely contained evidence pertaining to the shooting. In the affidavit supporting the warrant, Godwin explained that violent offenders often communicated with their cell phones and that their cell phones frequently contained evidence of their crimes. The affidavit also described Godwin's prior law enforcement experience, and indicated that he had investigated numerous violent crimes. These statements established a nexus, "however slight," between the shooting and Collins's cell phone. See Anzualda, 44 Va. App. at 784, 607 S.E.2d at 759.

- 10 -

Moreover, additional circumstances supported police reliance on the warrant at issue. "In determining whether police officers relied in good faith on a judicially issued warrant, we may 'take into account information known to police officers that was not included in the search warrant affidavit.'" Midkiff v. Commonwealth, 54 Va. App. 323, 332, 678 S.E.2d 287, 292 (2009) (quoting Adams, 275 Va. at 273, 657 S.E.2d at 94). In this case, Godwin obtained two warrants regarding the cell phones. A magistrate in Prince George County issued a warrant authorizing Godwin to search Collins's property and seize any cell phones that he found, and a circuit court judge sitting in the City of Richmond issued a warrant authorizing the search of the contents of the cell phone. Thus, two different officials had previously determined that Godwin's affidavit established a sufficient nexus between the shooting and Collins's cell phone.

We conclude that a reasonable police officer could have relied in good faith on the warrant authorizing the search of Collins's cell phone. The warrant contained some indicia of probable cause establishing that evidence of the shooting would be found on the cell phone, and both a magistrate and a circuit court judge concluded that probable cause supported the search. Under these circumstances, the circuit court did not err by determining that the evidence obtained from Collins's cell phone was admissible under the Leon good faith exception.

B. THE EVIDENCE WAS SUFFICIENT TO SUPPORT COLLINS'S CONVICTIONS

When considering the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also Code § 8.01-680. Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). It asks instead whether "*any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added) (quoting Jackson, 443 U.S. at 319). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

On appeal, Collins contends that the evidence presented at trial failed to establish that he was the perpetrator of the charged offenses. Collins maintains that Johnson's testimony was incredible. Collins emphasizes that Johnson's testimony regarding the shooting was inconsistent with the evidence found at the crime scene. Collins also notes that Johnson's testimony was contradicted by his own version of the shooting and the testimony of Brown, the individual who called 9-1-1 after the shooting.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Smith v. Commonwealth, 56 Va. App. 711, 718, 697 S.E.2d 14, 17 (2010) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Ragsdale v. Commonwealth, 38 Va. App. 421, 429, 565 S.E.2d 331, 335 (2002) (quoting Ashby v. Commonwealth, 33 Va. App. 540, 548, 535 S.E.2d 182, 187 (2000)).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." Cuffee v. Commonwealth, 61 Va. App. 353, 364, 735 S.E.2d 693, 698 (2013) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 423, 579 S.E.2d 658, 663 (2003)). In the present case, Johnson unequivocally identified Collins as his

assailant. Johnson testified that he knew Collins before the shooting. Johnson also provided a detailed physical description of Collins to the police after the shooting, and later selected him as the perpetrator from a photo lineup. Johnson's testimony identifying Collins as his assailant was not inherently incredible.

Moreover, Johnson's testimony regarding the shooting was corroborated by substantial evidence. Johnson testified that Collins shot at him five times. Fleming, the Dominion Power employee working nearby, testified that he heard five gunshots on the day of the shooting. Johnson also testified that Collins was wearing an "Army fatigue jacket" and driving a small blue four-door car with "donut tires" on the day of the shooting. Fleming testified that he saw an individual wearing a camouflage jacket quickly walk away from the scene of the shooting and drive away in a similar car with a "donut tire" on one of its wheels.

Johnson also testified that Collins shot him with a pink and black .380 caliber pistol. Cartridge cases and bullets were found at the crime scene that could have been fired by a .380 caliber firearm. Furthermore, an image found on Collins's cell phone showed a hand holding a pink and black Ruger .380 caliber pistol, and a forensic scientist testified that the cartridge cases and bullets found at the crime scene could have been fired by a similar weapon.

Collins notes that Johnson testified that he was initially shot in the parking lot rather than the alley. As no cartridge cases or bullets were found in the parking lot, Collins maintains that Johnson's description of the shooting was incredible. This argument is without merit. Provost, the detective who collected evidence from the crime scene, testified that first responders often inadvertently moved evidence when responding to an emergency medical situation. Although Johnson testified that Collins shot at him five times, the police only found three cartridge cases and three bullets following the shooting. Based on this evidence, the jury could have reasonably

inferred that the police simply failed to discover all of the cartridge cases and bullets located at the crime scene.

While Johnson's testimony regarding the shooting was inconsistent with Collins's testimony about the incident, the jury reasonably rejected Collins's testimony. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Flanagan v. Commonwealth, 58 Va. App. 681, 702, 714 S.E.2d 212, 222 (2011) (quoting Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998)). In the present case, the jury was entitled to reject Collins's self-serving testimony that an unknown man shot Johnson.

Notably, the evidence in this case established that Collins immediately fled from the scene of the shooting. The Supreme Court of Virginia has explained that "[f]light following the commission of a crime is evidence of guilt." Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996). Additionally, Collins lied to the police about the shooting. Collins initially told the police that he did not know Johnson, and he denied any involvement in the shooting. "A false or evasive account is a circumstance, similar to flight from a crime scene, that a fact finder may properly consider as evidence of guilty knowledge." Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). Further, Collins's credibility was impeached by his prior criminal convictions. See Code § 19.2-269; Va. R. Evid. 2:609.

Collins contends that Brown's testimony supported his description of the shooting. Brown testified that he saw a man wearing black clothing run away from the alley immediately after the shooting. Although Collins suggested that this man may have been the shooter, the jury could have inferred that this individual was merely a bystander running away from the shooting or a concerned individual running to get help. The shooting occurred in downtown Richmond in the middle of the day, and many people were nearby.

We conclude that the evidence presented by the Commonwealth was sufficient to support Collins's convictions. Ample evidence established that Collins was the perpetrator of the offenses at issue. Johnson unequivocally identified Collins as his assailant, and his testimony regarding the shooting was corroborated by substantial evidence. Accordingly, the circuit court did not err by convicting Collins of the present offenses.

### III. CONCLUSION

For the reasons stated, we affirm Collins's convictions.

<u>Affirmed.</u>