COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Chief Judge Felton, Judges Humphreys and Chafin
Argued at Salem, Virginia


RAHEEM MONTAZ KNIGHT

                                                      OPINION BY
v.       Record No. 0066-12-3          CHIEF JUDGE WALTER S. FELTON, JR.
                                                   DECEMBER 18, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

M. Lee Smallwood, II, Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Raheem Montaz Knight ("appellant") appeals his conviction of carrying a concealed

weapon, second or subsequent offense, in violation of Code § 18.2-308. Appellant asserts the

Circuit Court of the City of Danville ("trial court") erred by denying his pretrial motion to suppress

the firearm seized by police from his backpack during a warrantless search. For the following

reasons, we conclude that the trial court erred by denying appellant's motion to suppress evidence

of the firearm seized from his backpack.

## I.  BACKGROUND

"On appeal from a denial of a suppression motion, we must review the evidence in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Slayton

v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

So viewed, the evidence showed that on June 23, 2011, Danville Sheriff's Deputy Brenda

Hayes was working in her off-duty capacity as a security guard for Piedmont Mall. On that day, she

was situated in the security guard office, located inside the mall, approximately twelve feet from one of the mall's main entryways.[1]

Shortly before 6:00 p.m., appellant entered the security guard office where Deputy Hayes was seated. Appellant explained to her that he had a fight with his girlfriend, C.A., in the mall parking lot, that he hit her, that she was outside the mall in their vehicle, and that he wanted Deputy Hayes to accompany him to the parking lot to help "calm her down." Deputy Hayes offered to send a mobile unit to the parking lot to assist appellant, but appellant repeated his request that Deputy Hayes assist him. Deputy Hayes noticed that appellant was carrying a black backpack and some CDs.[2]

Deputy Hayes agreed to accompany appellant to the parking lot. She walked out of the security office first, followed by appellant, who left his backpack in the security office. As she and appellant approached the glass doors at the mall's entrance, Deputy Hayes saw "two Danville Police cars coming across the parking lot." When she saw the police vehicles, she returned to the security office. Appellant proceeded to leave the mall and walk toward the parking lot.[3]

When Deputy Hayes returned to the security guard office, she noticed appellant's backpack inside the office beside the door. She locked the office door, securing the backpack inside, and proceeded to the parking lot where appellant, C.A., and the Danville police officers were located. She approached Danville Police Department Officer Lancaster and informed him that appellant left

---

[1] The mall entryway, consisting of glass double doors and windows, was so situated that the parking lot was visible from inside the mall.

[2] Appellant told Deputy Hayes that he came to the mall to sell his CDs.

[3] Deputy Hayes testified that her entire exchange with appellant took less than five minutes and that no other person entered or exited the mall at that entrance during that time period.

"a [] black bag inside the mall office."[4] She also told the officer that he "needed to come and take a look at the bag." Officer Lancaster advised her that he would "be in there in a minute." Deputy Hayes then returned to the security guard office.

After speaking with appellant and C.A. in the parking lot, Officer Lancaster entered the mall and joined Deputy Hayes in the security guard office. Officer Lancaster testified that when he entered the security office he "observed [the backpack] sort of right near the doorway of the office. I picked the bag up and when I picked the bag up, I opened it, and inside, I noticed a weapon inside of a holster." Officer Lancaster then returned to the parking lot and "approached [appellant] with the backpack" in his hand. When he asked appellant what was in the backpack, "[I said to him] 'Don't lie.'" Appellant responded that there was a handgun inside the backpack. Officer Lancaster subsequently arrested appellant for carrying a concealed weapon, second or subsequent offense, in violation of Code § 18.2-308.

Prior to trial, appellant moved the trial court "to suppress all evidence seized as a result of the warrantless and non-consensual search of his [backpack]" by Officer Lancaster. He asserted that "[n]o consent or exigent circumstances existed that would justify a search of the [backpack] without a warrant." The Commonwealth asked the trial court to deny appellant's motion to suppress, arguing that Officer Lancaster's warrantless search of appellant's backpack was valid under the "community caretaker" exception to the warrant requirement, that appellant abandoned his privacy interest in his backpack when he left it in the mall, and that Officer Lancaster inevitably would have discovered the handgun in appellant's backpack.

Officer Lancaster, Deputy Hayes, appellant, and C.A. each testified at the pretrial hearing on appellant's motion to suppress evidence of the handgun found in his backpack. After hearing

_____

[4] Officer Lancaster testified that he was dispatched to Piedmont Mall on June 23, 2011 because of a reported domestic dispute. When he arrived at the mall, he saw appellant and C.A. in the parking lot. C.A. told Officer Lancaster that she and appellant had a dispute.

that testimony and argument from the Commonwealth and appellant, the trial court found that appellant left the backpack inside the mall security office, that the backpack belonged to appellant, and that Deputy Hayes informed Officer Lancaster that the backpack belonged to appellant. The trial court also found that Officer Lancaster's warrantless search of appellant's backpack inside the mall security office did not violate his Fourth Amendment right against unreasonable searches. It found that Officer Lancaster's warrantless search of appellant's backpack was a valid exercise of his "community caretaker" function. The trial court stated that, as "gratuitous bailees" of appellant's backpack, Deputy Hayes and Officer Lancaster "had some duty . . . which validate[d] the [community] caretaker function." The trial court also found that Officer Lancaster did not act in bad faith by opening and searching appellant's backpack without a warrant. Accordingly, it denied appellant's motion to suppress the handgun found in his backpack.

Pursuant to Code § 19.2-254, appellant entered a conditional guilty plea to carrying a concealed weapon, second or subsequent offense, in violation of Code § 18.2-308. The trial court found appellant guilty of the charged offense and sentenced him to four years' imprisonment, with all but forty-five days suspended.

## II. ANALYSIS

"Appellate review of a trial court's denial of a defendant's motion to suppress is *de novo* when the defendant claims that the evidence sought to be suppressed was seized in violation of the Fourth Amendment." Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008). On such review, the appellate court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). "To prevail on appeal, 'the defendant must show that the trial court's denial of his

suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error.'" Slayton, 41 Va. App. at 105, 582 S.E.2d at 450 (quoting Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003)).

### A. Community Caretaker Doctrine

Appellant first asserts that the trial court erred by finding that Officer Lancaster's warrantless search of his backpack was reasonable under the community caretaker doctrine.

Searches and seizures conducted without a warrant are presumptively invalid. Minnesota v. Dickerson, 508 U.S. 366, 372 (1993). However, Virginia recognizes a "community caretaker" exception to the Fourth Amendment warrant requirement. See King v. Commonwealth, 39 Va. App. 306, 309, 572 S.E.2d 518, 520 (2002).

The community caretaker exception requires that an officer have an objectively reasonable belief that his conduct in searching a closed container, such as the backpack here, is necessary to provide aid or to protect members of the public from physical harm. See Williams v. Commonwealth, 42 Va. App. 723, 730, 594 S.E.2d 305, 309 (2004); Commonwealth v. Waters, 20 Va. App. 285, 290, 456 S.E.2d 527, 530 (1995). For a warrantless search of a closed container to be upheld as permitted within the Fourth Amendment, the warrantless entry must be "totally divorced" from a criminal investigation. Cady v. Dombrowski, 413 U.S. 433, 441 (1973).

Whether a warrantless search of a closed container under the community caretaker exception to the warrant requirement is within the recognized exception is determined by whether, based upon the totality of the circumstances, it was reasonable for the officer to believe that the search was necessary for: (1) the protection of the owner's property while it remained in police custody; (2) the protection of police against claims or disputes concerning lost or stolen property; or (3) protection of the public and the police from physical danger. Williams, 42 Va. App. at 730, 594

S.E.2d at 309.  Overall, "[o]bjective reasonableness remains the linchpin of determining the validity of [the] action."  Waters, 20 Va. App. at 290, 456 S.E.2d at 530.

Viewed in the light most favorable to the Commonwealth, the evidence presented at the motion to suppress hearing proved that Deputy Hayes knew that the backpack that had been left in the security guard office belonged to appellant.  Indeed, Deputy Hayes expressly told Officer Lancaster that appellant left his backpack in her office.

The record was bereft of any evidence that Officer Lancaster searched the backpack to protect himself or Deputy Hayes from any "claims or disputes" regarding appellant's property.  Williams, 42 Va. App. at 730, 594 S.E.2d at 309.  Neither Deputy Hayes nor Officer Lancaster articulated any reasonable suspicion that the backpack or its unknown contents posed a danger to the public.  Rather, Deputy Hayes testified, without explaining why, she found it "suspicious" that appellant left his backpack in the security guard office under "the circumstances."  Officer Lancaster testified that he searched the backpack because he was "curious" about its weight, without testifying why he thought its weight was suspicious of activity that posed a danger to the public.

Stated simply, the evidence presented in the record presented on appeal wholly fails to implicate public safety concerns or the safeguarding of personal property.  The record lacks evidence that gives rise to an objectively reasonable belief that Officer Lancaster's searching appellant's backpack was necessary to protect the backpack or its contents from theft or damage; to protect Deputy Hayes or Officer Lancaster from appellant's claims of stolen property; or to protect the police or public from danger.

Accordingly, we conclude that the trial court erred by finding that Officer Lancaster's warrantless search of appellant's backpack was reasonable under the community caretaker exception to the warrant requirement.

The Commonwealth additionally asserts that, notwithstanding any finding by this Court that Officer Lancaster's warrantless search of appellant's backpack was not objectively reasonable under the community caretaker exception to the warrant requirement, we should nonetheless affirm the judgment of the trial court under the "right result, wrong reason" doctrine. It contends that we should conclude that appellant abandoned any privacy interest he had in the backpack when he left it unattended in the security guard office. The Commonwealth asserts that an individual having a legitimate expectation of privacy in an object may nevertheless abandon that expectation, and thereby forfeit "all standing to complain of its warrantless search and seizure." Wechsler v. Commonwealth, 20 Va. App. 162, 173, 455 S.E.2d 744, 749 (1995).

The Commonwealth argues that because this Court must review a trial court's denial of a motion to suppress *de novo*, it may affirm, under prescribed circumstances, on a legal ground the trial court did not reach. See Frye v. Commonwealth, 231 Va. 370, 389, 345 S.E.2d 267, 281 (1986) ("[W]e will not reverse a trial court's ruling when, as here, the correct result has been reached, although the court may have assigned the wrong reason for its ruling."). However, an appellate court may affirm on a ground other than that relied upon by the trial court *only* "when the evidence in the record supports the new argument on appeal, and the development of additional facts is not necessary." Perry v. Commonwealth, 280 Va. 572, 579, 701 S.E.2d 431, 435 (2010).

On this record, we disagree with the Commonwealth's assertion that the trial court's denial of appellant's motion to suppress evidence of the firearm should be affirmed by application of the "right result, wrong reason" doctrine, that is, that appellant abandoned his backpack when he left it in the security office.

Abandonment of property by a person under Fourth Amendment analysis "is different from the property law concept of abandonment. A person may retain a property interest in personal

property while, at the same time, relinquishing his or her reasonable expectation of privacy in that property." Commonwealth v. Holloway, 9 Va. App. 11, 18, 384 S.E.2d 99, 103 (1989). "'A person's intent to retain a reasonable expectation of privacy [governs] whether the property has been abandoned . . . [and] is to be determined by objective standards. Such an intent may be inferred from words, acts[,] and other objective facts.'" Watts v. Commonwealth, 57 Va. App. 217, 228, 700 S.E.2d 480, 485 (2010) (quoting Holloway, 9 Va. App. at 18, 384 S.E.2d at 103). "The determination of this intent must be made after consideration of all relevant circumstances, but two factors are particularly important: denial of ownership and physical relinquishment of the property." Holloway, 9 Va. App. at 18, 384 S.E.2d at 103.

Here, the trial court made no findings of fact regarding appellant's purpose or motivation for leaving his backpack in the security guard office. It did not find that appellant disclaimed ownership of the backpack, nor is there any evidence in the record on appeal to suggest that he did. The trial court did not make any factual finding that appellant intended to leave the mall without retrieving his backpack, which he left in the security office. Moreover, the trial court made no factual finding that appellant forgot he left the backpack in the office, that he left the backpack in the office to conceal it from police, or that he otherwise intended to discard the backpack or its contents. The trial court merely found that appellant left his backpack in the security guard office when he departed from the office to speak with C.A. in the parking lot. This Court will not apply the "right result, wrong reason" doctrine "'where, because the trial court has rejected the right reason or confined its decision to a specific ground, further factual resolution is needed before the right reason may be assigned to support the trial court's decision.'" Harris v. Commonwealth, 39 Va. App. 670, 676, 576 S.E.2d 228, 231 (2003) (*en banc*) (quoting Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992)). Absent additional findings of fact by the trial

court, we conclude that the record on appeal is insufficient for this Court to conclude that appellant abandoned his privacy interest in his backpack.[5]

Because the trial court made no factual finding on the issue of abandonment, we do not reach the Commonwealth's contention that appellant abandoned his Fourth Amendment expectation of privacy in his backpack at the time Officer Lancaster conducted the warrantless search.

### C. Application of the Exclusionary Rule

The Commonwealth also asserts that, if this Court concludes that Officer Lancaster's search of appellant's backpack was not objectively reasonable under the community caretaker exception to the warrant requirement, it nonetheless should affirm the trial court's denial of the motion to suppress because the trial court found that Officer Lancaster acted in good faith by searching appellant's backpack. The Commonwealth asserts that, where an officer has executed an illegal search in "complete good faith," application of the exclusionary rule is inappropriate because it does not serve to deter future unlawful police conduct. Michigan v. Tucker, 417 U.S. 433, 447 (1974).

---

[5] We note that the trial court found that Deputy Hayes and Officer Lancaster were "gratuitous bailees" of appellant's backpack and that they owed some "duty" of care to safeguard his property.

The trial court's finding that Officer Lancaster and Deputy Hayes were gratuitous bailees of appellant's backpack is a finding separate and distinct from determining that appellant abandoned his privacy interest in his backpack. Other jurisdictions that have considered whether an owner abandons his privacy interest in his property merely by virtue of a gratuitous bailment have concluded that, under the Fourth Amendment, an owner retains a reasonable expectation of privacy in lost or mislaid property, "diminished to the extent that the finder may examine and search the lost property to determine its owner." State v. Kealy, 907 P.2d 319, 326 (Wash. Ct. App. 1995); see also State v. Ching, 678 P.2d 1088, 1092-93 (Haw. 1984) (controlled substances found in a closed brass cylinder suppressed where the cylinder was inside an unzipped leather pouch, police found owner's identification before opening the cylinder, and defendant retained an expectation of privacy in cylinder's contents); State v. May, 608 A.2d 772, 776 (Me. 1992) (controlled substances found in defendant's misplaced wallet suppressed because the searching officer knew to whom the wallet belonged and was not searching it for purposes of identification); State v. Pidcock, 759 P.2d 1092, 1094-95 (Ore. 1988) (a misplaced briefcase that was not deliberately left behind was not abandoned; however, the court nonetheless upheld the officer's examination of the contents of the case as a reasonable search undertaken in an effort to identify the owner).

The Fourth Amendment exclusionary rule "'prevents evidence obtained in violation of the [F]ourth [A]mendment from being used against an accused.'" Redmond v. Commonwealth, 57 Va. App. 254, 261, 701 S.E.2d 81, 84 (2010) (quoting Commonwealth v. Ealy, 12 Va. App. 744, 750, 407 S.E.2d 681, 685 (1991)).

However, the exclusionary rule only applies where it "'result[s] in appreciable deterrence'" of unlawful police conduct. United States v. Leon, 468 U.S. 897, 909 (1984) (quoting United States v. Janis, 428 U.S. 433, 454 (1976)).

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

Tucker, 417 U.S. at 447. The Court in Leon opined that "'evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" Leon, 468 U.S. at 919 (quoting United States v. Peltier, 422 U.S. 531, 542 (1975)). As this Court recently held in Bellamy v. Commonwealth, 60 Va. App. 125, 724 S.E.2d 232 (2012), "[w]hen police err in the manner presented in this record, which is not 'systemic error or reckless disregard of constitutional requirements,' any application of the exclusionary rule to deter police misconduct 'does not pay its way.'" Id. at 133, 724 S.E.2d at 236 (exclusionary rule did not require suppression of a .22 caliber bullet found in defendant's pants pocket during a search incident to arrest where investigating officer reasonably and in good faith relied on a dispatcher's erroneous report of an outstanding warrant for defendant's arrest).

Unlike the circumstances presented in Bellamy, here Officer Lancaster could "'properly be charged with knowledge[] that the search [of appellant's backpack] was unconstitutional under the Fourth Amendment.'" Ward v. Commonwealth, 273 Va. 211, 225, 639 S.E.2d 269, 275-76 (2007) (quoting Leon, 468 U.S. at 919). The record reflects that Officer Lancaster told the trial court that he knowingly executed a warrantless search of appellant's backpack merely because he was "curious" about its weight when he picked it up, without any further explanation of why the weight of the backpack caused him to be "curious." Mere curiosity, without more, does not suffice to validate an otherwise unlawful search. Cf. Washington v. Commonwealth, 60 Va. App. 427, 436, 728 S.E.2d 521, 526 (2012) (exigent circumstances, coupled with a showing of probable cause of house having been broken into, justified warrantless entry into home); Cauls v. Commonwealth, 55 Va. App. 90, 98, 683 S.E.2d 847, 850-51 (2009) ("plain view" exception to warrant requirement authorized warrantless seizure); Anderson v. Commonwealth, 48 Va. App. 704, 710, 634 S.E.2d 372, 375 (2006) (warrantless search may be made of a person who is lawfully arrested); Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78, 538 S.E.2d 316, 318 (2000) (warrant and probable cause are not required if consent is given freely and voluntarily); Derr v. Commonwealth, 6 Va. App. 215, 219, 368 S.E.2d 916, 918 (1988) (automobile may be stopped and searched without a warrant if there is probable cause to believe it contains evidence of crime).

Here, it is clear that Officer Lancaster failed to act "as a reasonable officer would and should act in similar circumstances." Arizona v. Evans, 514 U.S. 1, 11-12 (1995) (quoting Leon, 468 U.S. at 919-20). Accordingly, we decline to affirm the judgment of the trial court denying appellant's motion to suppress on the ground that Officer Lancaster acted in good faith by searching appellant's backpack.

D.  Fruit of the Poisonous Tree Doctrine

Finally, the Commonwealth asserts that, notwithstanding any finding by this Court that Officer Lancaster's search of appellant's backpack was not objectively reasonable under the community caretaker or good faith exception to the warrant requirement, this Court nonetheless should affirm the judgment of the trial court, denying appellant's motion to suppress evidence of the gun found in his backpack, because appellant told Officer Lancaster a gun was in the backpack when asked by Officer Lancaster what was in the backpack.  The Commonwealth asserts that appellant's response to Officer Lancaster was an "independent source" for the officer's discovery of the handgun.  Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974).

In determining whether evidence is derivative of an illegal act and, therefore, barred as "fruit of the poisonous tree," the question is "'whether[,] granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"  Wong Sun v. United States, 371 U.S. 471, 488 (1962) (quoting John M. Maguire, Evidence of Guilt 221 (1959)).  Evidence is obtained by means "sufficiently distinguishable" from the primary taint so as to be admissible despite illegality if it is "evidence attributed to an independent source."  Warlick, 215 Va. at 266, 208 S.E.2d at 748.

In Segura v. United States, 468 U.S. 796 (1984), officers, armed with probable cause to make an arrest, impermissibly entered Segura's apartment without a warrant and absent exigent circumstances justifying the entry.  Id. at 804.  The Supreme Court concluded that items discovered in plain view during the initial entry should be suppressed.  However, it held that the evidence seized the following day as the result of a valid search warrant was admissible.  Discussing the "independent source" doctrine, the Court reasoned that

> [n]one of the information on which the warrant was secured was
> derived from or related in any way to the initial entry into petitioners'

- 12 -

apartment; the information came from sources wholly unconnected with the entry and was known to the agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant. It is therefore beyond dispute that the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence now challenged.

Id. at 814.

Here, Officer Lancaster approached appellant immediately after he unlawfully opened and searched appellant's backpack, confronted appellant with the backpack in his hand,[6] asked appellant what was in the backpack, and demanded that appellant tell the truth. When he asked appellant what was in the backpack, and told him not to lie, Officer Lancaster already knew that the backpack belonged to appellant and that his prior warrantless search of that backpack revealed it contained a handgun. Unlike in Segura, here the "information obtained during" Officer Lancaster's unlawful warrantless search of appellant's backpack was clearly "used by [Officer Lancaster] to secure" appellant's admission that there was a gun in his backpack. Id. Rather than being "wholly unconnected" to Officer Lancaster's unlawful warrantless search of appellant's backpack, id., appellant's admission that there was a handgun in his backpack was "obtained by exploitation of th[at] unlawful search," Ealy, 12 Va. App. at 755, 407 S.E.2d at 688. The evidence in the record on appeal, viewed in the light most favorable to the Commonwealth, clearly demonstrates that appellant's response to Officer Lancaster's direct question and demand that appellant tell the truth of what was in the backpack, was not "sufficiently distinguishable [from the illegal search] to be purged of the primary taint," Wong Sun, 371 U.S. at 488, nor was it "wholly unrelated" to Officer Lancaster's illegal conduct, Segura, 468 U.S. at 814.

---

[6] There is no indication in the record whether the backpack was zipped or unzipped when Officer Lancaster presented it to appellant.

## III.  CONCLUSION

We hold the trial court erred by denying appellant's motion to suppress the handgun found in his backpack.  Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>