COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Causey, Chaney and Callins
Argued at Hampton, Virginia


TREVOR JAMAL SMALLWOOD

                                                     MEMORANDUM OPINION[*] BY
v.         Record No. 1028-23-1                 JUDGE DORIS HENDERSON CAUSEY
                                                          DECEMBER 30, 2024
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                            Bryant L. Sugg, Judge

          (Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.
          Appellant submitting on brief.

          Rebecca Johnson Hickey, Assistant Attorney General (Jason S.
          Miyares, Attorney General, on brief), for appellee.


        The trial court convicted Trevor Jamal Smallwood of possession of a firearm within ten

years of being convicted of a non-violent felony and fleeing from police.  On appeal, Smallwood

contends the trial court erred by denying his motion to suppress the firearm as the fruit of an

unconstitutional seizure.  For the following reasons, we affirm the trial court's judgment.

                                    BACKGROUND[1]

        On October 7, 2022, Newport News Police Sergeant J.A. Clark went to a convenience store

in response to a report of suspected child abuse.  The store clerk had called 911 and reported that

there was a "small child . . . inside the store with a bloody nose."  When Clark entered the store, he

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] "When considering a challenge to the denial of a motion to suppress [on appeal], we
'view the evidence in the light most favorable to the prevailing party, the Commonwealth, with
all inferences fairly deducible from that evidence accorded to the Commonwealth.'" *Parady v.
Commonwealth*, 78 Va. App. 18, 24 n.1 (2023) (quoting *McArthur v. Commonwealth*, 72
Va. App. 352, 359 (2020)).

saw Smallwood speaking to a "white female" near a small child whose nose was bleeding. The clerk told Clark that she thought Smallwood might "be[] on something." Clark exited the store and waited outside with another officer, Chavis-Cortez, who had just arrived.

Moments later, Smallwood and the child exited the store together, and shortly thereafter, Smallwood picked the child up and held him. Clark approached Smallwood, identified himself as a police officer, and informed Smallwood that he was "responding because of a concerned citizen's call and just checking on the child's welfare." When Clark explained that the call was "in reference to the child with a bloody nose," Smallwood said the child had injured himself while "playing" at "a family member's house." Smallwood indicated that "his wife or the mother of the child" was inside a nearby vehicle, so Chavis-Cortez proceeded to the vehicle to speak with the woman and "see what story she gave." After "about 4 to 5 minutes," the officers asked Smallwood "if he had identification." In response, Smallwood said that his identification was "in a bag in the back of [his vehicle]." While still holding the child, Smallwood searched the back of his vehicle but was unable to produce identification. Chavis-Cortez then told Smallwood, "That's fine. Just give me your name and date of birth." Smallwood complied.

Meanwhile, two additional officers, J.W. Smith and D. Locklear, arrived and joined the group. The officers "ran" the information Smallwood provided through a criminal records database, revealing he had "an active warrant" for a felony offense committed in another county. When the officers told Smallwood that he was being "detained" and "wasn't free to leave," Smallwood handed the child to the woman in the front seat and ran away. During a brief pursuit, Smallwood fell down and officers handcuffed him. Police searched Smallwood and found a firearm in the "waistband" of his pants. The officers transported Smallwood to the jail, where he was formally

- 2 -

charged with fleeing police and possession of a firearm within ten years of being convicted of a non-violent felony.[2]

Before trial, Smallwood moved to suppress the firearm police found on his person, arguing that it was the fruit of an unlawful seizure. He asserted that Clark and Chavis-Cortez unlawfully "seiz[ed]" him by demanding his identification without reasonable suspicion to believe that he was engaged in criminal activity. Emphasizing that "[n]o reasonable person would believe they were free" to terminate the conversation and walk away "after being asked for identification by uniformed, armed police officers," Smallwood argued that Clark and Chavis-Cortez "turned" their initial consensual encounter "into a compelled detention" by "demanding [his] identification."[3] He maintained that "any . . . suspicion of child abuse had been dispelled" before the officers demanded his identification.

At the hearing, Clark and Chavis-Cortez testified that when they initially approached Smallwood, they did not "detain[]" him or say that he was "not free to leave." The officers confirmed that they spoke to Smallwood in a "casual" tone and testified that they would have allowed him to leave if he so desired. Both officers acknowledged that nothing indicated that Smallwood had "done anything to the child" or otherwise connected him to criminal activity when they asked him to identify himself.

Following argument, the trial court held that the officers "were not investigating" Smallwood for criminal activity when they asked for his identification but instead "were investigating the circumstances surrounding the child." Thus, the court held that it was reasonable for the officers to ask Smallwood to identify himself during their encounter. Accordingly, the trial

---

[2] At trial, the Commonwealth introduced a certified copy of an order from the Circuit Court of York County reflecting that Smallwood had been convicted of grand larceny in 2016.

[3] The record does not reflect whether the officers were armed, wearing police uniforms, or displaying their badges of authority during the investigation.

court denied Smallwood's motion to suppress. The trial court later convicted Smallwood in a bench trial for possession of a firearm within ten years of being convicted of a non-violent felony offense and fleeing law enforcement.[4] Smallwood appeals.

ANALYSIS

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)). We are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *Knight v. Commonwealth*, 61 Va. App. 297, 305 (2012) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). "[W]e 'review[] *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment.'" *Parady v. Commonwealth*, 78 Va. App. 18, 29 (2023) (second alteration in original) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)). Moreover, "[a]lthough we defer to the trial court's factual findings, we review the 'application of the "fruit of the poisonous tree" doctrine [to those facts] *de novo*.'" *Echavarry v. Commonwealth*, 60 Va. App. 177, 184 (2012) (second alteration in original) (quoting *United States v. Lentz*, 524 F.3d 501, 522 (4th Cir. 2008)).

Smallwood contends that the trial court erred by denying his motion to suppress because Clark and Chavis-Cortez unlawfully seized him by demanding his identification without reasonable suspicion to believe that he was engaged in criminal activity. He emphasizes that any suspicion of

---

[4] At Smallwood's suppression hearing and trial, the parties played portions of videos from the officers' body-worn cameras depicting their interaction with Smallwood during the investigation. Those videos are not part of the appellate record, however, because neither party formally introduced them into evidence. *See* Rule 5A:7.

child abuse or other criminal conduct was "quickly dispelled . . . once the officers spoke with Smallwood and had the opportunity to observe the child." Smallwood's argument is unpersuasive.

## I. The *Terry* Stop

First, we note that Smallwood's encounter with police officers is most properly characterized as a temporary, investigatory *Terry v. Ohio*, 392 U.S. 1 (1968), stop. Although the officers characterized their encounter with Smallwood as "consensual," we find this characterization unpersuasive.

Although the officers characterized their encounter with Smallwood as "consensual," "[i]nteractions between the police and citizens fall into one of three categories: (1) consensual encounters, (2) investigatory, or *Terry*, stops requiring reasonable suspicion, and (3) full arrests requiring probable cause." *McLellan v. Commonwealth*, 37 Va. App. 144, 150-51 (2001). "A consensual encounter occurs when police officers approach persons in public places 'to ask them questions,' provided 'a reasonable person would understand that he or she could refuse to cooperate.'" *Id.* at 151 (quoting *United States v. Wilson*, 953 F.2d 116, 121 (4th Cir. 1991)). "Such encounters 'need not be predicated on any suspicion of the person's involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.'" *Payne v. Commonwealth*, 14 Va. App. 86, 88 (1992) (quoting *Wilson*, 953 F.2d at 121).

In contrast, "'brief investigatory stops,'[5] now known as *Terry* stops, 'must be based on specific and articulable facts which, taken together with rational inferences from these facts,

---

[5] In denying Smallwood's motion to suppress, the trial court noted that "[i]t seems from the testimony that [the court] heard from the officers . . . is that they were not investigating the defendant." The trial court also noted that "[the officers were] really investigating the circumstances surrounding the child and who are these people with the child and do they know anything about the circumstances." Because "[o]n appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo,'" *Cole*, 294 Va. at 354 (quoting *Cost*, 275 Va. at 250), and "[w]e review de novo the trial court's application of the law to the particular facts of the case," *Branham v.*

reasonably warrant a limited intrusion.'" *Turay v. Commonwealth*, 79 Va. App. 286, 297 (2023) (quoting *Iglesias v. Commonwealth*, 7 Va. App. 93, 99 (1988)). *Terry* stops are a form of temporary seizure. *See Terry*, 392 U.S. at 19, 20, 30. "In *Terry v. Ohio*, . . . the Supreme Court held that a police officer may, without violating the Fourth Amendment, make a brief investigatory stop of a person when the officer has a reasonable suspicion, based on objective facts, that criminal activity may be afoot." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016). The test for whether a stop was consensual or constituted a seizure is whether a reasonable person, in the circumstances, would have felt free to leave. *Bolden v. Commonwealth*, 263 Va. 465, 472 (2002). A number of factors have been identified as potentially relevant to this totality-of-the-circumstances assessment, including the number of officers present, their display of weapons, physical contact, tone of voice, retention of documents, and "whether a citizen was told that he or she was free to leave." *Brown v. City of Danville*, 44 Va. App. 586, 603 (2004) (quoting *Harris v. Commonwealth*, 266 Va. 28, 32 (2003)). Relevant here, whether the police "informed the defendant that they suspected him of 'illegal activity rather than treating the encounter as "routine" in nature'" has been recognized as a material factor. *United States v. Black*, 707 F.3d 531, 538 (4th Cir. 2013) (quoting *United States v. Gray*, 883 F.2d 320, 323 (1989)).

Here, Officer Clark approached Smallwood in public and informed him that he was responding to a "concerned citizen's call" that related to a "child's welfare." The officer specified that he was investigating because of this child's "bloody nose." When Smallwood provided an explanation for the child's bloody nose, the officer proceeded to question the mother of the child and asked Smallwood for identification. Officer Clark never told Smallwood that he was free to leave or to decline the request. *See Brown*, 44 Va. App. at 603. In these circumstances, a

---

*Commonwealth*, 283 Va. 273, 279 (2012), it is proper to address the nature of the encounter on appeal.

reasonable person in Smallwood's position would have reasonably understood that the encounter was not merely "routine," but that he was being investigated for an alleged crime against a child. *See id.* A reasonable person, therefore, when asked to produce identification, would not have felt free to decline and walk away. Officer Clark's stop of Smallwood and request that he produce identification was not merely a consensual encounter, but rose to the level of a brief, investigative detention requiring reasonable suspicion. *See McLellan*, 37 Va. App. at 150-51.

## II. Reasonable Suspicion

"To have reasonable suspicion, a police officer need only have a "'minimal level of objective justification" for making . . . a stop.'" *Turay*, 79 Va. App. at 297-98 (alteration in original) (quoting *Branham v. Commonwealth*, 283 Va. 273, 280 (2012)). As this court noted in *Turay*, "[i]n [a] typical detention scenario—where the police detain someone as part of general police patrol activity—our Supreme Court has cautioned that 'location' and the 'time of the stop,' on their own, cannot provide reasonable suspicion of criminal activity," but a different scenario entirely arises when, as in this case, "in response to a report of specific and recent criminal activity in a particular place . . . an officer encounters a suspect not in the vacuum of routine patrol activity, but against the backdrop of that recently reported crime." *Id.* at 299-300.

When an officer encounters a person in response to a report of a specific suspected criminal activity, "a reviewing court must consider the general reasonable suspicion factors . . . in relation to the reported crime." *Id.* at 300. Smallwood contends that any suspicion of child abuse or other criminal conduct was "quickly dispelled . . . once the officers spoke with Smallwood and had the opportunity to observe the child." However, the "mere possibility of an innocent explanation does not necessarily exclude a reasonable suspicion that criminal activity is afoot." *Hill v. Commonwealth*, 297 Va. 804, 815 (2019) (internal quotation marks and citations omitted). Clark testified that although "the child did not seem at that point to be in any kind of danger, [he] didn't

know what [the child's] relationship was to the gentleman that was holding him." Because we must "consider the general reasonable suspicion factors . . . in relation to the reported crime," we must consider the concerns that arise in cases of alleged or suspected child abuse. *Turay*, 79 Va. App. at 300. Such concerns are not limited only to the immediate circumstances of the child, but to the identity of those responsible for the child's wellbeing,[6] because it is "[t]he Commonwealth's policy . . . to protect abused children and to *prevent further abuse* of those children." *Jackson v. W.*, 14 Va. App. 391, 402 (1992) (emphasis added). Therefore, the officers had reasonable suspicion to briefly stop Smallwood and ask for his identification, and the evidence obtained because of that identification was not unconstitutionally obtained.

### III. Attenuation

Furthermore, even if the officers had lacked reasonable suspicion to seize Smallwood by demanding identification, the officers' conduct does not justify applying the exclusionary rule. The exclusionary rule is "not 'a personal constitutional right,'" but a "judicially created remedy" "whose 'sole purpose . . . is to deter future Fourth Amendment violations.'" *Collins v. Commonwealth*, 297 Va. 207, 214 (2019) (alteration in original) (first quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976); and then quoting *Davis v. United States*, 564 U.S. 229, 236-38 (2011)). Thus, "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly unwarranted.'" *Id.* (quoting *Davis*, 564 U.S. at 237).

"Suppression of evidence can yield appreciable deterrence where the illegality engaged in by law enforcement results in the discovery of evidence that naturally flows from that illegality." *Echavarry*, 60 Va. App. at 185. Thus, "'evidence obtained as a direct [or indirect] result of an unconstitutional search or seizure is plainly subject to exclusion' as fruit of the poisonous tree." *Id.*

---

[6] In denying Smallwood's motion to suppress, the trial court found that "the officers asked for identification [and] their names, in case there was something going on with that child. I think it would be delinquent to do anything else."

- 8 -

(alteration in original) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). Nevertheless, there are several exceptions to the exclusionary rule, including the "attenuation doctrine." *Baskerville v. Commonwealth*, 76 Va. App. 673, 691 (2023). "Under the attenuation doctrine, 'evidence is admissible when the connection between the unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance.'" *Carlson v. Commonwealth*, 69 Va. App. 749, 762 (2019) (quoting *Utah v. Strieff*, 579 U.S. 232, 238 (2016)). Courts look to three factors to determine whether the attenuation doctrine applies: (1) "whether there is a temporal proximity between the unconstitutional conduct and the discovery of evidence"; (2) "the presence of intervening circumstances"; and (3) "the purpose and flagrancy of the misconduct." *Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

In *Strieff*, the Supreme Court of the United States held that the attenuation doctrine applied where an officer unlawfully stopped the defendant and requested his identification without reasonable suspicion to do so. 579 U.S. at 235, 239. There, Strieff exited a house that the officer had been surveilling during a narcotics investigation. *Id.* After Strieff disclosed his identity, the officer relayed that information to a police dispatcher, who reported that Strieff had an outstanding arrest warrant for an unrelated offense. *Id.* at 235-36. The officer then arrested Strieff on that warrant and found contraband during a search incident to arrest. *Id.*

The Supreme Court held that although the first factor—the "temporal proximity between the initially unlawful stop and the search"—favored suppressing the evidence because the officer found the contraband on Strieff's person "only minutes after the illegal stop," the remaining factors supported applying the attenuation doctrine. *Id.* at 239. Regarding the second factor, the Court held that the officer's discovery of the valid, pre-existing warrant in Strieff's name for an unrelated offense was an intervening circumstance that sufficiently dissipated the taint of the initial unlawful stop. *Id.* at 240-41. Additionally, assessing the third factor, the Court noted that the officer's

misconduct was neither purposeful nor flagrant because he merely intended to "find out what was going on [in] the house" and he was "at most negligent" because he did not have reasonable suspicion to stop Strieff and, therefore, "should have asked Strieff whether he would speak with him, instead of demanding that Strieff do so." *Id.* at 241 (alteration in original).

*Strieff* is dispositive. Even if Smallwood's detention were considered an unlawful seizure without reasonable suspicion, that circumstance does not justify excluding the firearm police found on Smallwood's person during the ensuing lawful search incident to his arrest on a valid, pre-existing warrant for an unrelated offense. *Id.* at 239. Indeed, although police found the firearm on Smallwood's person shortly after Chavis-Cortez allegedly detained him without reasonable suspicion, the subsequent discovery of Smallwood's outstanding arrest warrant sufficiently dissipated the taint of the alleged initial illegality. *Id.* at 240-41. Moreover, as in *Strieff*, had the officers' conduct been an error, such error was neither purposeful nor flagrant because, as the trial court found, they were merely "trying to find what was going on with the child," and Chavis-Cortez's failure to request rather than demand Smallwood's identification would be "at most negligent." *Id.* at 241.

In sum, regardless of whether the police had reasonable suspicion to demand Smallwood's identification, application of the exclusionary rule would not be proper in this case. If there was reasonable suspicion for a *Terry* stop, ascertaining the identity of a person holding a child who is the subject of a report of suspected child abuse is within the scope of an officer's investigatory stop pursuant to the suspicion created by the report. If the officers unlawfully seized Smallwood by demanding his identification without reasonable suspicion, the exclusionary rule does not apply because the officers were at most negligent and their discovery of Smallwood's outstanding arrest warrant for an unrelated offense sufficiently dissipated the taint of the initial illegality. Accordingly, the trial court did not err by denying Smallwood's motion to suppress.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*