COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Causey and Lorish
Argued by videoconference


CORDESHA VONDELL MORRIS

MEMORANDUM OPINION[*] BY
v.      Record No. 0255-24-2      JUDGE JUNIUS P. FULTON, III
APRIL 15, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Sarah L. Deneke, Judge

John D. Mayoras for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


After unsuccessfully challenging the admission of the firearm discovered as a result of a

consensual search of his girlfriend's home, Cordesha Vondell Morris was convicted on his

conditional guilty pleas of possession of a firearm by a violent felon and probation violations.

Consistent with the terms of the plea agreement, the trial court sentenced Morris to the

mandatory term of 5 years' incarceration.

On appeal, Morris contends that the trial court erred in denying his motion to suppress

because the search unconstitutionally exceeded the scope of the consent granted by the owner of

the home. Finding no error, we affirm the conviction.

BACKGROUND

"On appeal, we state the facts 'in the light most favorable to the Commonwealth, giving

it the benefit of any reasonable inferences.'" *Commonwealth v. White*, 293 Va. 411, 413 (2017)

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

(quoting *Evans v. Commonwealth*, 290 Va. 277, 280 (2015)). "This standard requires us 'to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Id.* at 414 (quoting *Evans*, 290 Va. at 280). "The defendant has the burden to show that, when viewing the evidence in the light most favorable to the Commonwealth, the trial court's denial of the motion to suppress was reversible error." *Sydney v. Commonwealth*, 280 Va. 517, 522 (2010). "We review de novo the trial court's application of the law to the particular facts of the case." *Branham v. Commonwealth*, 283 Va. 273, 279 (2012). But we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc).

On January 5, 2023, Caroline County Deputy Ashley Lewis, a school resource officer, learned that a third-grade boy at Madison Elementary School was "very distraught," claiming that shots were fired outside his home that morning by his mother's boyfriend, Cordesha Morris. The child's home was at 19373 Monroeville Road, where he lived with his mother, Jacklyn West, and where Morris stayed at times. Deputy Lewis contacted Deputy Cardoso, who contacted West. Subsequently, West called Morris, whose cellular phone pinged at West's home.[1] Caroline County Lieutenant Benjamin Sadler spoke with West and confirmed that Morris was her boyfriend. West gave the investigators a key to her house and consent to search for Morris there. Lieutenant Sadler gave West his cell phone number in case she decided to withdraw her consent; she did not call.

---

[1] Caroline County Sheriff's Office Investigator Hess confirmed that Morris was a convicted felon and had outstanding arrest warrants.

With knowledge of an outstanding warrant for Morris, Lieutenant Sadler and other law enforcement officers, "confident" that Morris was inside, entered West's house with her key. Morris was well known to Lieutenant Sadler who described him as a "runner" and a "hider."[2] After searching cabinets and closets in other areas of the house for Morris, Lieutenant Sadler entered the bedroom, checked the bedroom closet, beneath a sink, and then "flipped" the bed. Lieutenant Sadler said he did not look under the bed first because he knew Morris to be "a violent individual," knew "him to possess firearms," and was "not going to stick [his] head underneath a bed to see if [Morris] was there without . . . having the upper hand."

Lieutenant Sadler described the bed as a mattress with a box spring on a base with the small area underneath hidden by a "runner."[3] Lieutenant Sadler could not determine how much room was under the bed until he lifted the mattress and box spring. When he lifted the mattress, he found a firearm. He immediately dropped the mattress and lifted the box spring to make sure Morris was not under the bed. Lieutenant Sadler then collected the firearm, a 9-millimeter Taurus. Lieutenant Sadler said the search of the house took "[10, 15] minutes at the most." Morris was eventually found at a hotel in Ashland the next day, January 6, 2023, and arrested for possession of a firearm as a violent felon.[4]

---

[2] Lieutenant Sadler said he had found Morris hiding in an attic a few months before during another search.

[3] While Sadler said that the photo did not accurately depict the runner which obscured his view of the area under the bed, the trial court subsequently described the article as a "skirt" based on the photographs.

[4] It was further proffered that Morris admitted that he could not possess a firearm because he was a felon. He also told Lieutenant Sadler the Taurus might have his DNA on it because "the firearm [was] right where he kept his marijuana" under the mattress. The subsequent DNA analysis of the firearm by the Department of Forensic Science revealed that "Morris could not be eliminated as a major contributor" and that the probability of it not being his DNA was "1 in greater than 7.2 billion."

Morris moved to suppress "any evidence obtained by the police as a result of an unlawful search and seizure of [his] residence." He analogized the facts of his case to *Lugar v. Commonwealth*, 214 Va. 609 (1974), where the Court held that "a general search of the apartment was not justified by consent" when the officers sought Lugar, a fugitive, in an apartment with consent. *Id.* at 611. Specifically, the Court ruled that although a "reasonable search of places in the apartment where a fugitive might hide" was permitted, the consent "did not give [law enforcement officers] the privilege of searching in bank bags, trash containers or other spaces which obviously could not hide a man." *Id.* at 611-12.

The trial court opined that it had not "really heard anything that would establish from Mr. Morris's standpoint a right to privacy in this home," and was not certain Morris had standing to challenge the search. That said, the trial court assumed that Morris had standing for the purpose of the suppression hearing. In its analysis, the trial court found there was strong evidence of consent because West gave law enforcement a key to her house and said she "[didn't] mind [the officer] going into the house." Continuing, the trial court affirmed that the officers were lawfully on the premises and that lifting the mattress did not exceed the scope of the consent, because "the only way to secure that area [under the bed] or to ensure that no one [was] hiding within the frame [was] to lift the mattress and the box spring." The trial court denied the motion to suppress the gun because "the officers were lawfully on the premises," "lawfully conducting a search," and the gun was found in the course of that search.

ANALYSIS

"When challenging the denial of a motion to suppress evidence on appeal, the [appellant] bears the burden of establishing that reversible error occurred." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016) (citing *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)). This includes the burden of establishing an expectation of privacy in the area searched and the item seized.

*Delong v. Commonwealth*, 234 Va. 357, 363 (1987). "At this juncture, the Court considers the evidence in the light most favorable to the Commonwealth and affords it the benefit of all inferences fairly deducible from that evidence." *Williams v. Commonwealth*, 71 Va. App. 462, 474-75 (2020) (citing *Hill v. Commonwealth*, 297 Va. 804, 808 (2019)). "We are 'bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them.'" *Parady v. Commonwealth*, 78 Va. App. 18, 29 (2023) (quoting *Knight v. Commonwealth*, 61 Va. App. 297, 305 (2012)). "In addition, we 'give "due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."'" *White v. Commonwealth*, 73 Va. App. 535, 552 (2021) (quoting *Kyer v. Commonwealth*, 45 Va. App. 473, 479 (2005) (en banc)). However, the Court reviews "*de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." *Parady*, 78 Va. App. at 29 (quoting *Williams*, 71 Va. App. at 475).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . [and] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Saal v. Commonwealth*, 72 Va. App. 413, 426 (2020) (second and third alterations in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Further, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* (quoting *Bell*, 441 U.S. at 559). "[W]hether any particular action is reasonable for Fourth Amendment purposes 'is measured in objective terms by examining the totality of the circumstances.'" *Id.* (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

"This Court has repeatedly held, '[a] consensual search is reasonable if the search is within the scope of the consent given.'" *Lee v. Commonwealth*, 80 Va. App. 694, 702 (2024) (quoting *Edwards v. Commonwealth*, 38 Va. App. 823, 827 (2002)). "The scope of a person's consent is determined by whether it is objectively reasonable for the police to believe that the consent permitted them to search where they did." *Id.* at 703 (quoting *Grinton v. Commonwealth*, 14 Va. App. 846, 851 (1992)).

Here, Lieutenant Sadler believed that Morris, who had an outstanding felony arrest warrant and was suspected of firing shots outside of West's home earlier that day, was at that moment at her home based on cellular telephone location pings. West gave permission for Lieutenant Sadler and Investigator Hess to go to her home to search for Morris. West consented to the officers searching the house and gave the officers a key. Lieutenant Sadler gave her his cell number to call at any time if she chose to withdraw her consent, and she did not call. She advised the officers the gun was normally kept in the bedroom. Based on his past experience of Morris and others hiding from law enforcement, Lieutenant Sadler, "having found people hiding under deep beds" before or "underneath a mattress . . . Between a mattress and a box spring," was entitled to "search every single place we can possibly search where we've known people to hide or where we've known Mr. Morris to hide."

Indeed, the trial court made a finding of fact that "the picture of the bed does show the frame, . . . but that doesn't mean there's not a big area under that bed in between that bedframe where somebody could be hiding if they chose." The trial court further found that "the only way to secure that area or to ensure that no one is hiding within the frame is to lift the mattress and the box spring." Thus, there were only two ways to determine whether Morris was under the bed, by kneeling down and looking—discounted as unsafe by Lieutenant Sadler given Morris's reputation as a violent felon and his firing a weapon at the home earlier that day—or by flipping

the mattress and box spring.  Because we are bound by the trial court's findings unless plainly wrong or without evidence to support them, we find that the officer reasonably concluded that Morris might be concealed between the box spring and mattress or under the box spring on the floor under the bed.  Therefore, the trial court did not err in crediting the testimony of the officer which directly supported that conclusion.

We find the officers were lawfully present in the home given West's unconditional consent to search the home in its entirety for Morris.  We further find that the gun was in plain view, and thus admissible.

"The test for determining whether an item falls within the plain view rule is (1) the initial intrusion resulting in the plain view must be lawful, (2) discovery of the item must have been inadvertent, and (3) the incriminating nature of the item must be immediately apparent." *Reynolds v. Commonwealth*, 9 Va. App. 430, 439 (1990) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)).  The Supreme Court has frequently recognized pursuit of a felon as a circumstance potentially threatening the safety of the pursuing officer(s), and therefore an "exigent circumstance" justifying a search for weapons.  *Lugar*, 214 Va. at 628 (Poff, J., concurring) (citing *Vale v. Louisiana*, 399 U.S. 30, 35 (1970)).  Here, the officers were lawfully inside the home based on West's consent.  Further, knowing Morris to be a violent felon who possessed firearms, rather than kneel to look under the bed without knowing what he would encounter, officer safety dictated that Lieutenant Sadler first lift the mattress and box spring in West's bedroom to see if Morris was hiding there.  This action was objectively reasonable as the trial court found that the area under the bed was not readily discernable.  Although he was not found at the home, in lifting the mattress, Lieutenant Sadler inadvertently discovered the firearm in plain view.

Given the trial court's findings of fact and the totality of the circumstances, we find that the trial court properly denied Morris's motion to suppress the firearm. The officers were lawfully present in the home due to the homeowner's consent, the search for Morris under the mattress and box spring was within the scope of the consent to search, the firearm was inadvertently discovered and in plain view as a result of that lawful search, and, knowing Morris to be a felon, the incriminating nature of the firearm was immediately apparent.

## CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*