COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Causey and Frucci
Argued by videoconference

COMMONWEALTH OF VIRGINIA

v.     Record No. 0392-25-1

JAYLAN P. WIGGINS, S/K/A
 JAYLAN PIERRE WIGGINS

MEMORANDUM OPINION* BY
JUDGE DORIS HENDERSON CAUSEY
AUGUST 12, 2025

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellant.

Courtney R. Hanna, Assistant Public Defender (Heather M. Barnes,
Senior Assistant Public Defender, on brief), for appellee.

After police allowed Axel, a Newport News drug-sniffing dog, to repeatedly jump onto

and place his paws on the windows of Jaylan Wiggins's black Ford Explorer,[1] Wiggins moved to

suppress all evidence resulting from his interaction with officers that night, and the circuit court

granted Wiggins's motion. The Commonwealth appeals, arguing that the trial court erred

because the drug dog's open-air sniff did not constitute a search. Finding no error, we affirm the

judgment of the circuit court.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Ford Explorer is measured at approximately 69" high.
https://www.caranddriver.com/ford/explorer/specs.

BACKGROUND[2]

Newport News Police Officer Nicholas Jefferson acquired Axel, a Dutch Shepard, in August 2022. The pair began training for work in narcotics detection and patrol in Chesapeake in October 2022. Axel was trained to identify methamphetamines, cocaine, and ecstasy and was specifically trained not to identify marijuana. In training, Axel jumped onto a scent wall and vehicles that had traces of narcotics. Officer Jefferson never "tried to break him of that behavior." Axel became certified for narcotics detection in March of 2023. Axel did not pass the patrol portion of certification. At trial, Officer Jefferson testified that Axel alerts to the presence of narcotics by sitting or by putting both paws up on a vehicle. Officer Jefferson also testified that Axel has conducted sniffs on vehicles in the field over 100 times.

On November 28, 2023, Officer Jefferson, driving with Axel, initiated a traffic stop, at the request of Detective Weaver, on Jaylan Wiggins for driving with a suspended license.[3] Officer Jefferson approached the vehicle and asked for a license, which Wiggins did not have. Detective Weaver then arrived, and Officer Jefferson went back to his patrol vehicle to retrieve Axel for a dog sniff. With Axel in hand, Officer Jefferson returned to the vehicle and told Wiggins to roll down the window halfway so that smells could escape the vehicle and because Officer Jefferson "[didn't] want the dog to jump through the window and maybe, who knows, something happens."

Officer Jefferson then approached the vehicle with Axel. Upon reaching the vehicle, Axel immediately jumped onto the car's driver side door. Standing on his back legs, Axel placed

---

[2] Because this is an appeal by the Commonwealth of a trial court's order suppressing evidence, we recite the evidence in the light most favorable to Wiggins, the defendant. *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992).

[3] In response to the judge's inquiry, Officer Jefferson stated that "[he] was told to go ahead and stop Mr. Wiggins because he didn't have a license."

his paws on the lower part of the rolled-down driver's side window and bent forward, his face flush with the opening above the window, and his mouth closed. Axel then landed back on the ground, before jumping up onto the car door and window a second time. Officer Jefferson then led Axel around the vehicle and Axel continued to jump onto the vehicle, including onto the driver's side door one additional time. Officer Jefferson interpreted Axel's behavior as a positive alert to narcotics in the driver side door. Because of Jefferson's interpretation, he "advised Detective Weaver . . . we're good for a search." The search of Wiggins's vehicle yielded approximately two and a half ounces of marijuana, two digital scales, empty clear sandwich bags, and one firearm, which returned as stolen from Newport News. Officer Jefferson testified that Axel was not trained in the detection of the odor of marijuana.[4]

In his motion to suppress, Wiggins argued that Axel "illegally searched the Defendant's car when, in congruence with his training, Axel jumped onto the exterior of the door[.]" He asserted that "placing his paws on the door is an intrusion into the space of the vehicle and is a trespass." He maintained that the circuit court should, as a result, "suppress all evidence flowing from the unreasonable and unconstitutional search of his vehicle and person."

The court held a hearing where both sides presented witnesses and testimony. At the close of the hearing, the court granted Wiggins's motion. The court found that Axel "trespassed onto the vehicle for the purpose of obtaining information" and that this was "a bad search." The Commonwealth appeals the circuit court's ruling under Code §§ 19.2-398 and 19.2-400.

---

[4] Wiggins does not argue that Axel's lack of training on marijuana negated probable cause for the search.

ANALYSIS

I. Standard of Review

"[T]he ultimate question [of] whether the officers violated the Fourth Amendment triggers *de novo* scrutiny." *Slayton v. Commonwealth*, 41 Va. App. 101, 105 (2003) (quoting *Barkley v. Commonwealth*, 39 Va. App. 682, 689 (2003)). "In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant." *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992). The Commonwealth "bears the burden of establishing that reversible error occurred." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *Knight v. Commonwealth*, 61 Va. App. 297, 305 (2012).

II. The *Jones* Standard

The Commonwealth's first argument is that the circuit court's application of *United States v. Jones*, 565 U.S. 400 (2012), was incorrect because *Jones* does not control the issue of an open-air dog sniff, whereas *United States v. Place*, 462 U.S. 696 (1983), does.

"The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Jones*, 565 U.S. at 404 (quoting U.S. Const. amend. IV). In *Jones*, the government installed a GPS tracking device onto a target's vehicle and tracked the vehicle's whereabouts for 28 days. *Id.* at 402. The United States Supreme Court classified this action as a search under the Fourth Amendment. *Id.* at 404. Because the government had "physically occupied private property for the purpose of obtaining information," it had performed a "physical intrusion" into a constitutionally protected area that "would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.* at 404-05. The Court explained that "for most of

- 4 -

our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates." *Id.* at 406. The *Jones* Court made clear that its holding does not apply to governmental efforts to gain information where there is no trespass or physical intrusion. *See id.* at 411 ("[W]e do not make trespass the exclusive test. Situations involving merely the transmission of electronic signals without trespass would remain subject to *Katz* [*v. United States*, 389 U.S. 347 (1967),] analysis.").[5]

In *United States v. Place*, airport officers temporarily detained a passenger's luggage for the purpose of conducting a dog sniff based upon a reasonable suspicion the luggage contained narcotics. 462 U.S. at 697-98. During the sniff, the dog positively alerted to narcotics in the luggage. *Id.* at 699. Upon obtaining a warrant, officers searched the luggage and discovered 1,125 grams of cocaine. *Id.* The Court held that the dog sniff was not a search of the luggage under the Fourth Amendment because the luggage did not need to be opened, thus leaving the noncontraband items hidden from public view. *Id.* at 707. "Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item." *Id.* The Court noted, "we are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." *Id.*

Here, the dog sniff involved a physical intrusion, as in *Jones*. The issue on appeal is not whether the police were permitted to employ a dog sniff generally, but the significance of Axel's physical contact with Wiggins's vehicle in the context of the drug sniff to obtain information. Thus, the circuit court correctly applied *Jones*.

---

[5] *Jones* cites to *Katz*, 389 U.S. at 360, specifically noting that "[o]ur later cases have applied the analysis of Justice Harlan's concurrence in [*Katz*], which said that a violation occurs when government officers violate a person's 'reasonable expectation of privacy.'" 565 U.S. at 406.

III. Axel's conduct was a search under *Jones*

The Commonwealth argues that even if *Jones* applies, the open-air sniff was not a search because Axel did not trespass onto the vehicle. Additionally, the Commonwealth contends that if Axel did trespass, it was not for the purpose of obtaining information.

When "[t]he Government physically occupie[s] private property for the purpose of obtaining information . . . such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Jones*, 565 U.S. at 404-05. "It is beyond dispute that a vehicle is an "effect" as that term is used in the Amendment." *Id.* at 404. "[O]ur Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of the 20th century." *Id.* at 405. "[W]e do not make trespass the exclusive test."[6] *Id.* at 411. "Trespass is the unauthorized use of or entry onto another's property." *Jaynes v. Commonwealth*, 276 Va. 443, 459 (2008).

The circuit court found that the dog sniff was a search because Axel "trespassed for the purpose of obtaining information." This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *Knight*, 61 Va. App. at 305 (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). We hold that Axel's repeated jumping onto Wiggins's vehicle and physical placement of his paws on the vehicle, in the process of conducting a drug sniff, constituted a physical occupation and a trespass. Wiggins did not consent to Axel occupying Wiggins's vehicle, a constitutionally protected "effect," in that manner. Furthermore, Axel's role at the traffic stop was for one purpose: to obtain information. Viewing the evidence in a light most favorable to Wiggins, we conclude that Axel jumped onto the vehicle to obtain odors of narcotics coming out of the vehicle, particularly those odors that were

---

[6] "Trespass alone does not qualify, but there must be conjoined with that what was present here: an attempt to find something or to obtain information." *Jones*, 565 U.S. at 408 n.5.

coming through the window. This is consistent with Officer Jefferson's testimony that Jefferson asked Wiggins to roll the window down to allow odors to escape and his testimony that Axel's training involved jumping on scent walls to detect odors. It is also consistent with the body camera footage in this case, which shows Axel immediately placing his nose at the opening of the window upon approaching the car, as well as the testimony of Paul Roushia, who observed that when Axel jumped up and closed his mouth, he was sniffing. Therefore, under *Jones*, Axel's conduct constituted a physical trespass for the purpose of obtaining information. The drug sniff was, therefore, a search.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court and remand for further proceedings consistent with this opinion.

*Affirmed.*